UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA, )
)
v. ) No. 2:18-CR-00140-6-JRG-CRW
)
LARRY EVERETT SMITH. )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Amend Presentence Investigation Report ("PSR") and Statement of Reasons [Doc. 965], the United States' Response in Opposition [Doc. 974], and Defendant's Reply [Doc. 981]. For the reasons stated in Part I of this Order, Defendant's Motion to Amend PSR and Statement of Reasons [Doc. 965] is **DENIED**.

This matter also is before the Court on Defendant's Motion for Indicative Compassionate Release Ruling [Doc. 988], Memorandum in Support [Doc. 989], First Supplement to Motion for Indicative Compassionate Release Ruling [Doc. 995], and Second Supplement to Motion for Indicative Compassionate Release Ruling [Doc. 1006]; the United States' Response in Opposition [Doc. 999]; and Defendant's Reply [Doc. 1005]. For the reasons stated in Part II of this Order, Defendant's Motion for Indicative Compassionate Release Ruling [Doc. 988] is **DENIED**.

Finally, this matter is before the Court on Defendant's Motion to Expedite Indicative Compassionate Release Ruling [Doc. 993]. Defendant's Motion to Expedite [Doc. 993] is **GRANTED**.

1

# BACKGROUND

On January 25, 2021, Defendant pleaded guilty to Conspiracy to Commit Healthcare Fraud after he and his accomplices deceived thousands of patients to acquire their insurance information and defrauded health-insurance providers out of $24.9 million. [Plea Agreement, Doc. 296.]

**PSR Does Not Indicate that Defendant Abused Alcohol, but Indicates that He has Various Medical Conditions.**

Prior to Defendant's sentencing, the Court ordered the United States Probation Office to complete a presentence investigation and, in accord with that directive, the Probation Office undertook an investigation and drafted a PSR [Doc. 739]. The report included sections detailing Defendant's substance abuse history and medical conditions.

In the "Substance Abuse" section of the PSR, the responsible probation officer reported:

175. The defendant admitted he experimented with cocaine and Ecstasy approximately 20 years ago. The defendant further admitted he first tried marijuana when he was 25 or 26 years old. The defendant used marijuana rarely, and his last use occurred in September 2018.

176. Defendant Smith disclosed no history of drug treatment; however, he expressed interest in treatment while in the custody of the Bureau of Prisons.

[*Id.* at 34 ¶¶ 175–76.] The report also noted that Defendant was "exposed to alcohol" as a child, but did not indicate that Defendant abused alcohol himself. [*Id.* at 33 ¶ 167.]

2

In the "Physical Condition" section of the PSR, the responsible probation officer indicated that Defendant had a history of heart problems and other medical conditions. Specifically, the officer explained:

> 171. The defendant reported he suffers from heart problems, and he is under the care of a cardiologist. According to the defendant, he underwent aortic valve replacement approximately 10 years ago. In addition, defendant Smith suffers from high-blood pressure (controlled with medication), poor vision (wears corrective lenses), and dental problems. Lastly, defendant Smith reported he was hospitalized approximately two years ago for treatment of diverticulitis with perforation. The defendant believes a section of his intestines were removed, and he remains under the care of a gastroenterologist.

> 172. According to Bardmoor Gastroenterology in Seminole, Florida, the defendant suffers from recurrent diverticulitis and gastroesophageal reflux disease. Records further reflect the defendant sought treatment for a hiatal hernia, internal hemorrhoids, and rectal polyps.

> 173. The following information was received from The Heart and Vascular Institute of Florida. The defendant has a history of bicuspid aortic valve stenosis, and he underwent valve replacement in 2011. Records reflect a history of diverticulitis, hyperlipidemia, and hypertension. The most recent cardiology note dated August 18, 2021, reflects no significant problems from a "cardiac perspective." Records further reflect, "Echo findings were discussed and aortic valve is functioning well and which he got it done almost 10 years ago. The gradient across aortic valve remains about 16 mmHg. He denies any symptoms of chest pain shortness of breath. He does have rare symptoms of positional dizziness and etiology is uncertain."

[*Id.* at 34 ¶¶ 171–73.]

On April 18, 2022, Defendant filed his Objections to the PSR [Doc. 766]. He made no objections regarding the PSR's characterization of his substance abuse history or his medical conditions. [*Id.*]

3

**Defendant Sentenced to 42 Months' Imprisonment and Residential Substance Abuse Treatment Recommended.**

On May 17, 2022, this Court sentenced Defendant to 42 months' imprisonment. [J., Doc. 906 at 2.] Based on Defendant's history of drug abuse and his desire to undergo substance abuse treatment, the Court recommended that Defendant participate in the Bureau of Prisons' ("BOP") Residential Drug Abuse Program ("RDAP"). It stated:

> I'll further recommend that you receive 500 hours of substance abuse treatment from the BOP's [RDAP], and there's, maybe there's not strong reason to do that, but I know that you have been on prescription medications and that there is some old history of substance abuse. I also know that you have expressed interest in treatment while in the custody of the [BOP.]

[Sentencing Tr., Doc. 933 at 131:21–132:3.] In hopes of Defendant's admission into the program and his maximalization of its benefits, the Court also instructed Defendant to be honest with the BOP's RDAP counselors regarding drug and alcohol use. It stated:

> And I'll tell you something, Mr. Smith, you need to be absolutely honest with the counselor who talks to you about that program. Don't minimize any drug use, don't forget to talk to them about alcohol use because if they determine you don't have a drug problem, they won't let you in the program; and if you get in that program and you successfully complete it, you can earn some time off. That's not the reason you ought to do it, but that's a benefit that comes to you.

[*Id.* at 132:4–12.] The Court reiterated its RDAP recommendation in its written Judgment [J., Doc. 906 at 2].

4

**Defendant Obtains Supplemental Substance Abuse Assessments Before Reporting to the BOP.**

After sentencing, but prior to reporting to the BOP, Defendant met with substance abuse professionals and obtained supplemental substance abuse assessments. The assessments elaborated on his history of drug and alcohol abuse and stated that he should receive treatment while incarcerated. First, on May 27, 2022, Defendant met with Connie Crossley, a Tennessee licensed Marriage and Family Therapist, who completed a Substance Abuse Subtle Screening Inventory Report and opined that Defendant should participate in "intensive treatment for both alcohol and substance abuse." [Crossley Rep., Doc. 965-4 at 8; *see also* Crossley CV, Doc. 965-5.] Then, August 11, 2022, he met with Dr. Gerard W. Bryant, a New York licensed psychologist, who completed a Psychological Evaluation Report and opined that Defendant has severe alcohol use disorder and "could benefit from an intensive drug treatment program, such as [RDAP]." [Bryant Rep., Doc. 965-2 at 6; *see also* Bryant CV, Doc. 965-3.]

**BOP Denies Defendant's RDAP Application.**

On August 17, 2022, Defendant reported to the BOP at FPC Pensacola and immediately applied for RDAP. [Def.'s Mot. Am. PSR, Doc. 965 at 2–3.] The BOP, however, denied his application based on a determination that his presentence investigation report did not contain information reflecting a verifiable substance abuse disorder. [*Id.*] Defendant then provided the BOP with Ms. Crossley and Dr. Bryant's reports in an attempt to get it to reconsider its decision, but the BOP upheld its denial. [*Id.* at 3–5.]

5

**Defendant Appeals His Sentence.**

On June 29, 2022, Defendant appealed his sentence. [Notice of Appeal, Doc. 911.] His appeal remains pending at the Sixth Circuit Court of Appeals. *See United States v. Smith*, No. 22-5559 (6th Cir. docketed June 30, 2022).

## I.

## MOTION TO AMEND PSR AND STATEMENT OF REASONS

Defendant's Motion to Amend PSR and Statement of Reasons asks the Court to order an amended PSR that adds additional details regarding his substance abuse history and to amend its Statement of Reasons to elaborate on his drug and alcohol history and its RDAP recommendation.[1] [Def.'s Mot. Am. PSR, Doc. 965 at 1.] Specifically, he wants the Probation Office to supplement the PSR with information found in Ms. Crossley and Dr. Bryant's reports and he wants the Court to consider and include their opinions in its Statement of Reasons. [*Id.* at 19.] Despite having appealed his sentence, Defendant asserts that Federal Rule of Criminal Procedure 36 gives the Court the authority to order an amended PSR. [*Id.* at 1.] As for the Statement of Reasons, he argues that because it "serves only a record keeping

---

[1] Defendant also makes various arguments regarding the BOP's alleged wrongful denial of his RDAP application. [Def.'s Mot. Am. PSR, Doc. 965 at 13–17.] The Court lacks jurisdiction to hear those claims. *See Aguilera v. Fed. Bureau of Prisons*, No. 4:13 CV 513, 2013 WL 5676324, at *4 (N.D. Ohio Oct. 17, 2013) (providing that "district courts in the Sixth Circuit have allowed petitioners to challenge their ineligibility from RDAPs through a § 2241 petition.") (citations omitted); *see also Charles v. Chandler*, 180 F.3d 753, 756 (6th Cir. 1999) (establishing that a writ of habeas corpus under § 2241 must be filed in the jurisdiction where the prisoner is being held).

6

function," the Court retains jurisdiction under 28 U.S.C. § 994(w) to amend it at any time. [*Id.* at 13.]

The United States has responded in opposition to Defendant's motion. [U.S. Resp. Opp'n Am. PSR, Doc. 974.] It argues that the Court lacks jurisdiction to act on his motion during the pendency of his appeal. [*Id.* at 6.] Further, it argues that even if the court has jurisdiction to address Defendant's motion, his requests to amend the PSR and the Statement of Reasons are not the type of clerical errors contemplated by Rule 36. [*Id.* at 7–12.]

## LEGAL STANDARD

Generally, "the filing of the notice of appeal with the district court clerk deprives the district court of jurisdiction to act in matters involving the merits of the appeal." *United States v. Holloway*, 740 F.2d 1373, 1382 (6th Cir. 1984). But, the Sixth Circuit has recognized a few limited exceptions to this general rule for a narrow class of actions that do not "alter the case on appeal." *United States v. Carman*, 933 F.3d 614, 617 (6th Cir. 2019) (citations omitted).

District courts may "proceed with a case when the notice of appeal is from a patently non-appealable order[.]" *Holloway*, 740 F.2d at 1382 (citations omitted). They also can "enter remedial orders not affecting the merits of the appeal, such as orders granting bail to a successful habeas petitioner[.]" *Id*. Finally, they can "take actions in aid of the appeal." *Carman*, 933 F.3d at 617 (quoting *United States v. Sims*, 708 F.3d 832, 834 (6th Cir. 2013)). For example, they can "memorialize oral opinions soon after a decision was rendered." *Inland Bulk Transfer Co. v. Cummins Engine*

7

*Co.*, 332 F.3d 1007, 1013 (6th Cir. 2003) (listing cases). They may not, however, "develop[] supplemental findings after the notice of appeal has been filed." *Id.*; *see also United States v. Harvey*, 996 F.3d 310, 312–13 (6th Cir. 2021) (holding that district court opinion supplementing earlier order and filed 23 days after notice of appeal and was not a remedial matter unrelated to the merits of the appeal).

## ANALYSIS

Defendant's motion to amend the PSR and Statement of Reasons does not fall within any of the narrow exceptions for when a Court can act during the pendency of an appeal. Therefore, it must be denied. Additionally, as to Defendant's request to amend the Statement of Reasons, even if the Court did have jurisdiction, it declines to supplement its reasoning with information that did not exist at the time of sentencing.

### A.    The Court Lacks Jurisdiction to Order an Amended PSR.

Federal Rule of Criminal Procedure 36 does not give the Court authority to order an amended PSR. Rule 36 provides that "[a]fter giving any notice it considers appropriate, the court may at any time correct a *clerical error* in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36 (emphasis added). The Sixth Circuit "has held that 'a clerical error must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature[;]'" in short, a typo. *United States v. Robinson*, 368 F.3d 653, 656 (6th Cir. 2004) (citations omitted). The Sixth Circuit has further provided "that Rule 36 'is not

8

a vehicle for the vindication of the court's unexpressed sentencing expectations, or for the correction of errors made by the court itself[.]'" *Id.*

Defendant seeks to have new information added to the PSR—the information in Ms. Crossley and Dr. Smith's reports. This is plainly outside the bounds of Rule 36.

Defendant's request to supplement his substance abuse history also goes to the merits of the appeal. On appeal, Defendant has asserted that his sentence was both substantively and procedurally deficient because, among other things, the Court did not address each defense motion, including those arguing for a reduced sentence based on his health conditions and need for medical care, and it inadequately addressed § 3553(a) factors when it rejected his motion for downward departure and variance. Appellant Br. at 18, 36–44, *United States v. Smith*, No. 22-5559 (6th Cir. Jan. 12, 2023). But adding new information to the PSR about Defendant's substance abuse history would necessarily alter the facts underpinning the Court's rulings on Defendant's motions and its § 3553(a) analysis. *See United States v. Gardner*, 32 F.4th 504, 529 (6th Cir. 2022) (establishing that, as a matter of procedure, consideration of §3553(a) factors is a "holistic" process that requires the district judge to "listen[] to each argument, consider[] the supporting evidence, [be] fully aware of the defendant's circumstances and [take] them into account.") (citations omitted); *see also Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730, 734 (9th Cir. 1988) ("The appellate court is entitled to review a fixed, rather than a mobile, record.").

9

Accordingly, the Court finds that it does not have jurisdiction to order an amended PSR.

**B.    The Court Lacks Authority to Amend its Statement of Reasons.**

28 U.S.C. § 994(w) does not give the Court authority to update its Statement of Reasons at any time. While Defendant is correct that a statement of reasons serves a record-keeping function, that is not its only function. [Def.'s Mot. Am. PSR, Doc. 965 at 13; *see also United States v. Gates*, 48 F.4th 463, 469 (6th Cir. 2022) (providing that a statement of reasons primarily serves a record-keeping function).] A review of Sixth Circuit cases demonstrates that a statement of reasons is considered a material part of the appellate record and is reviewed as an indicator of a district court's intentions at sentencing. *See United States v. Denny*, 653 F.3d 415, 421–23 (6th Cir. 2011) (establishing that, although its probative value is low, a statements of reasons can be used to resolve ambiguities in a district court's oral sentence); *see also United States v. Blackie*, 548 F.3d 395, 401–02 (6th Cir. 2008) (attempting to resolve ambiguities at sentencing by looking to written judgment and commitment order); *United States v. Woody*, No. 22-3241, 2023 WL 2137358, at *3 (6th Cir. Feb. 21, 2023) ("The district court's written statement of reasons further confirms that it varied above the advisory guideline range.").

Because the Statement of Reasons is another expression of the Court's sentencing expectations, the Court finds that amending it would go to the merits of Defendant's appeal. *See Holloway*, 740 F.2d at 1382 (establishing that district courts cannot act in matters involving the merits of an appeal after a notice of appeal has

been filed). Additionally, amending the Statement of Reasons to add new information regarding Defendant's substance abuse history that was not provided to the Court at sentencing would be an impermissible supplementation of the Court's unexpressed sentencing expectations long after sentencing. *See Inland Bulk Transfer*, 332 F.3d at 1013 (establishing that trial courts cannot develop supplemental findings after a notice of appeal has been filed). Moreover, even if the Court could amend its Statement of Reasons, it would decline to do so because the information that Defendant seeks to have added was created after sentencing.

Accordingly, Defendant's Motion to Amend PSR and Statement of Reasons [Doc. 965], is **DENIED**.

## II.

### MOTION FOR INDICATIVE COMPASSIONATE RELEASE RULING.

Defendant's Motion for Indicative Compassionate Release Ruling asks the Court to enter an order indicating to the Sixth Circuit Court of Appeals that it would grant Defendant compassionate release upon remand of his appeal. [Def.'s Mot. Compassionate Release, Doc. 988 at 1; *see also* Fed. R. Crim. P. 37.] He argues that compassionate release is warranted because his medical conditions—hypertension, diverticulitis, gastroesophageal reflux disease, hyperlipidemia, substance abuse, pulmonary fibrosis, asthma, obstructive sleep apnea, and obesity—could be better managed outside of custody, and because those conditions put him at higher risk for COVID-19 complications. [*Id.* at 1, 3.] Defendant places a particular emphasis on his heart problems, which he argues require regular monitoring that the BOP is unable

to provide. [Def.'s Mem. Supp. Mot. Compassionate Release, Doc. 989 at 6–9.] Further, he asserts that a proposed amendment to the United States Sentencing Guidelines policy statements—which would expand the grounds for "extraordinary and compelling" reasons based on medical conditions to include conditions requiring long-term, specialized care—indicate that his heart conditions are extraordinary and compelling reasons warranting his release.[2] [*Id.* at 11–14.] Defendant also argues that the BOP's denial of his RDAP application warrants compassionate release because it demonstrates the BOP's inability to provide him with the medical care he needs.[3] [*Id.* at 10–11.]

The United States has responded in opposition to Defendant's request for compassionate release. [U.S. Resp. Opp'n Mot. Compassionate Release, Doc. 999.] As an initial matter, the United States asserts that Defendant has not exhausted his

---

[2] *See* United States Sentencing Commission, *Proposed Amendments to the Sentencing Guidelines*, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230201_RF-proposed.pdf (last accessed May 22, 2023).

[3] Defendant also lodges various complaints about the medical treatment he has received from the BOP. [*See, e.g.*, Def.'s Mem. Supp. Mot. Compassionate Release, Doc. 989 at 8 ("Notably, during a temporary stay at the Santa Rosa County Jail, [Defendant] was only given Carvedilol once per day and twice missed his medication entirely."); *see also* First Suppl. Mot. Compassionate Release, Doc. 995 at 2 ("Despite several reports to sick call, the [BOP] delayed effective medical care, failed to provide antibiotics for a week, and waited ten days before generating a cardiology consultation for [Defendant] despite his high risk for complications and significant cardiovascular history.").] The Court will not address these claims because a motion for compassionate release is not the proper vehicle to seek relief for claims of improper medical care. *See United States v. Guzman*, No. 3:10-CR-161-TAV-DCP, 2021 WL 5217624, at *6 (E.D. Tenn. Nov. 9, 2021) (providing that claims for failing to provide adequate medical treatment "should be addressed through 42 U.S.C. § 1983 or another appropriate civil remedy, not through a motion for compassionate release.") (citations omitted).

12

administrative remedies for some of his grounds for relief; namely, the BOP's inability to offer him adequate medical treatment, its refusal to admit him into RDAP, and the proposed amendment to the Sentencing Guidelines. [*Id.* at 4–5.] It further argues that he has not established an extraordinary and compelling reason warranting his release and, even if he had, § 3553(a) factors weigh against it. [*Id.* at 5–11.]

## LEGAL STANDARD

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). 18 U.S.C. § 3582(c)(1)(A) gives district courts discretion to grant motions for sentence reductions and compassionate release if: (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction is consistent with applicable Sentencing Commission policy statements, and (3) after considering § 3553(a) factors, the reduction is warranted in whole or in part under the circumstances of the case. *United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (citations omitted). Where, such as here, a motion for compassionate release is filed by a prisoner, district courts have "full discretion to define 'extraordinary and compelling[.]'" *Id.* at 1111; *see also United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021) ("[I]n the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative.") (citations omitted).

13

Accordingly, they also "may skip step two of the § 3582(c)(1)(A) inquiry." *Id.* (establishing that sentencing commission policy statements do not apply to prisoner-filed motions for compassionate release).

Before a defendant may move for compassionate release in federal court, he must fully exhaust his administrative remedies by making request for compassionate release with the BOP and exhausting all administrative rights to appeal with the prison or wait thirty days after making their request to the prison if the BOP does not respond. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted). A defendant's failure to exhaust their administrative remedies does not deprive a court of subject-matter jurisdiction. *Id.* at 833. Nevertheless, the exhaustion requirement is a mandatory claims-processing rule that courts must enforce if it is invoked by the United States. *Id.* at 833–36.

## ANALYSIS

Defendant has not established an extraordinary and compelling reason warranting his release and, even if he had, § 3553(a) factors weigh against it. Accordingly, his motion must be denied.

**A.    Defendant Exhausted His Administrative Remedies with Regard to the BOP's Inability to Offer Him Adequate Treatment, the BOP's Refusal to Admit Him into RDAP, and the Proposed Amendment to the Sentencing Guidelines; But He has Not Exhausted Them with Regard to Any Grounds Arising from His Recent Surgery.**

The United States has invoked the exhaustion requirement and argues that Defendant failed to exhaust his administrative remedies for the grounds based on the BOP's inability to offer him adequate treatment, the BOP's refusal to admit him into

14

RDAP, and the proposed amendment to the Sentencing Guidelines. [U.S. Resp. Opp'n Mot. Compassionate Release, Doc. 999 at 4–5.] The Court disagrees.

Although the crux of Defendant's request for compassionate release to the BOP was his susceptibility to COVID-19, he exhausted his remedies as to the BOP's inability to offer him adequate treatment, the BOP's refusal to admit him into RDAP, and the proposed amendment to the Sentencing Guidelines. Regarding the BOP's ability to treat him and its refusal to admit him into RDAP, in his Request for Compassionate Release, Defendant stated that he "has significant, congenital cardiovascular issues that require regular monitoring[,]" he explained Ms. Crossley and Dr. Bryant's opinions that he needs intensive substance abuse treatment, and he argued that "it is very questionable whether the BOP currently has the resources to properly manage [his] medical and mental health." [First Req. Compassionate Release, Doc. 989-7 at 1–3.] Collectively, these statements put the BOP on notice that Defendant was seeking compassionate release on grounds that it was unable to provide adequate physical and mental care, including substance abuse treatment. Further, his arguments to the BOP are materially similar to the arguments before the Court now. *See United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021) ("[A]n inmate is required to present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court.").

The Court questions whether the proposed amendment to the Sentencing Guidelines—which would expand the grounds for "extraordinary and compelling" reasons based on medical conditions to include conditions requiring long-term,

specialized care—constitute a distinct basis for compassionate release or are better treated as a derivative of Defendant's "inability to offer adequate treatment" argument. Either way, the Court finds that Defendant has exhausted his administrative remedies with regard to the proposed amendment.

Even though Defendant admittedly never mentioned the proposed amendment in his Request for Compassionate Release, because the BOP's analysis of the proposed amendment would be virtually identical to its analysis of Defendant's "inability to offer adequate treatment" ground, the exhaustion requirement is satisfied. [Def.'s Reply Mot. Compassionate Release, Doc. 1005 at 5 ("[Defendant] acknowledges that the proposed amendments to the Sentencing Guidelines were not raised as grounds for his compassionate release requests to the BOP."); *see Williams*, 987 F.3d at 703 ("[A]n inmate is required to present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court.").] Consideration of the proposed amendment would require the BOP to analyze whether it could provide Defendant with timely and adequate medical care. The BOP undertook that exact analysis when considering its ability to care for Defendant's medical conditions. Indeed, in its denial of Defendant's request, it stated that Defendant is "being monitored under the Chronic Care Clinic protocols and [is] receiving appropriate medical treatment for [his] conditions." [BOP Denial First Req. Compassionate Release, Doc. 999-2 at 1.] Accordingly, the purpose of the exhaustion requirement was fulfilled—the BOP had the opportunity to investigate Defendant's grounds for release—and exhaustion was satisfied. *See United States v. Mullins*, No. 2:17-CR-

16

00012-25, 2022 WL 10146928, at *3 (E.D. Tenn. Oct. 17, 2022) (establishing that, for motions for compassionate release, Congress requires that the BOP act as the initial arbiter of prisoners' claims).

In his Second Supplement to Motion for Compassionate Release, filed after the United States filed its Response in Opposition, Defendant argues that compassionate release is warranted because the BOP is unable to care for him during his recovery from a May 2, 2023, surgery to replace his prosthetic aortic valve. [Second Suppl. Mot. Compassionate Release, Doc. 1006 at 1–2.] The BOP's ability to care for Defendant while he recovers from surgery is a basis for compassionate release distinct from the BOP's general ability to monitor and manage Defendant's heart conditions—a fact that Defendant apparently acknowledges, as he submitted a Second Request for Compassionate Release to the BOP prior to his surgery. [*See* Second Req. Compassionate Release, Doc. 995-2.] Accordingly, the Court finds that this basis for compassionate release was not administratively exhausted and it will not consider it now.

## B. Defendant has Not Established an Extraordinary and Compelling Reason Warranting his Release.

Defendant's various medical conditions—bicuspid aortic stenosis, aortic stenosis, hypertension, diverticulitis, gastroesophageal reflux disease, hyperlipidemia, substance abuse, pulmonary fibrosis, asthma, obstructive sleep apnea, and obesity–and his alleged susceptibility to COVID-19 are not extraordinary and compelling reasons warranting his compassionate release. [Def.'s Mot. Compassionate Release, Doc. 988 at 1.]   Nor is the BOP's denial of his RDAP

17

application. [Def.'s Mem. Supp. Mot. Compassionate Release, Doc. 989 at 10–11.] The Court will address each ground in turn below.

### 1. Defendant's Medical Conditions are Not an Extraordinary and Compelling Reason Warranting his Release.

Defendant asks the Court to grant him compassionate release because his medical conditions, specifically his heart conditions, could be better managed outside of custody. [*Id.* at 5–9.] In support of this ground, he argues that his conditions require regular monitoring that the BOP is unable to provide. [*Id.*] Similarly, he argues that his conditions of confinement make it difficult for him to manage his own care. [*Id.*] Additionally, he asserts that a proposed amendment to the Sentencing Guidelines which would expand the grounds for "extraordinary and compelling" reasons based on medical conditions to include conditions requiring long-term, specialized care, demonstrates that he should be released. [*Id.* at 11–14.]

The Court begins by noting that Defendant's medical conditions were previously raised by him, considered by the Court, and treated as mitigating factors at sentencing. [*See* Sentencing Tr., Doc. 933 at 86:8–88:13; 126:13–127:3; *see also* PSR, Doc. 739 at 33–34 ¶¶ 167, 170–73, 175–76.] Therefore, for the most part, he is asking the court to improperly reconsider factual circumstances that existed at the time of his sentencing. *See United States v. Hunter*, 12 F.4th 555, 569–70 (6th Cir. 2021) ("[I]dentifying 'extraordinary and compelling reasons' is a task that focuses on post-sentencing factual developments. A court must first find that the facts of *the defendant's* personal circumstances changed after sentencing in a way that is 'extraordinary and compelling[.]'") (citations omitted and emphasis in original).

18

Arguably, there has been no change to Defendant's medical conditions. Although Defendant's prosthetic aortic valve has deteriorated, necessitating replacement surgery, even that was expected, and the Court satisfied itself at sentencing that the BOP would be able to manage that eventuality. [*See* Sentencing Tr. at 86:12–17 ("[Defendant] has failing heart valves, and he had to have them replaced about … 10 years ago … and those valves don't last [forever]. The research that I've reviewed said that they have to be replaced on average every 10 to 15 years[.]"); 126:18–25 ("Your physical condition is a bit of a mitigating factor, although there's no suggestion here that a Federal Medical Center can't properly address and treat if necessary the conditions you have.").]

Defendant has offered no proof that the BOP cannot manage his conditions. Indeed, the examples he offers in support of his argument appear to cut against it. For example, Defendant states that he was concerned about the BOP changing his hypertension prescription from Nebivolol to Carvedilol. [Def.'s Mem. Supp. Mot. Compassionate Release, Doc. 989 at 8.] But the fact that the BOP altered Defendant's prescription indicates to the Court that the BOP *can* care for his conditions—it shows that the BOP is monitoring his prescriptions, adjusting them as necessary, and explaining its reasoning for doing so. [*See* Def.'s Medical R., Doc. 989-1 at 10 ("Inmate Concerned about change in medication from nebivolol to carvedilol. Has not experienced any palpations or dizziness. Medication reviewed with inmate and inmate informed that medication was changed on 10/27.").]

19

As it relates to his prosthetic aortic valve, the gist of Defendant's motion is that the BOP would not have the ability to care for him in the event of a problem arising with it. [*See* Def.'s Mem. Supp. Mot. Compassionate Release, Doc. 989 at 9 ("[Defendant's] low blood pressure, the presence of a murmur, and a nearly twelve-year-old aortic heart valve are significant issues that require more rapid follow-up with a cardiologist, particularly given the age of his prosthetic aortic valve.").] Of course, that contingency has now come to pass and Court sees no proof that the BOP is unable to care for Defendant. After reporting to sick call in March 2023, the BOP identified a potential issue with Defendant's heart and sent him to see a cardiologist at HCA Florida West who diagnosed him with a failing aortic valve. [First Suppl. Mot. Compassionate Release, Doc. 995 at 2; Second Suppl. Compassionate Release, Doc. 1006 at 2.] Days later, Defendant underwent surgery to have the valve replaced. [Second Suppl. Mot. Compassionate Release, Doc. 1006 at 1.]

Likewise, Defendant has not offered any support for his assertion that the "conditions of confinement [] make it difficult for [him] to effectively manage his own care." [Def.'s Mem. Supp. Mot. Compassionate Release, Doc. 989 at 5.] For example, he has not offered proof that he is unable to carry out basic life functions such as eating, showering, or dressing.

Ultimately, Defendant's argument is that he would prefer to receive treatment outside of custody. While the Court has no doubt that BOP's treatment processes and procedures—which involve triaging—are likely a far cry from the individualized and/or preferential care that Defendant was accustomed to prior to incarceration, his

20

desire to see his own doctors, on his own terms, is not an extraordinary and compelling reason warranting his release.[4] The Court previously stated as much at sentencing:

> I understand that people would like to maintain their relationships, especially where there's a serious condition as yours is, with existing doctors, but that does not mean they won't get treatment for it. [Defendant's counsel], in the [sentencing memorandum] sort of compared it to depriving somebody of sustenance, food and water. It's not that at all.

[Sentencing Tr., Doc. 933 at 126:22–127:3.]

## 2. Defendant's Susceptibility to COVID-19 is Not an Extraordinary and Compelling Reason Warranting his Release.

Defendant argues that the Court should grant him compassionate release because his medical conditions put him at a higher risk for complications from COVID-19. [Def.'s Mot. Compassionate Release, Doc. 988 at 3.] But the Sixth Circuit recently held that "with 'vaccinations [widely] available to federal prisoners,' … claims about the dangers of COVID-19" are no longer an extraordinary and compelling reasons for compassionate release. *United States v. McCall*, 56 F.4th 1048, 1061 (6th Cir. 2022) (quoting *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022)); *see also United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction.") (citations omitted).

---

[4] *See* Federal Bureau of Prisons, Program Statement 6031.04: Patient Care, available at https://www.bop.gov/policy/progstat/6031_004.pdf (last accessed May 22, 2023).

Defendant's records indicate that he has been fully vaccinated and that he previously contracted COVID-19 and recovered. [Def.'s Medical R., Doc. 989-1 at 53; Def.'s Medical R., Doc. 989-2 at 123.] These facts demonstrate that he does not have a heightened susceptibility to complications from the virus. Accordingly, his concerns about COVID-19 are not extraordinary and compelling reasons warranting his compassionate release.

### 3. The BOP's Denial of Defendant's RDAP Application is Not an Extraordinary and Compelling Reason Warranting his Release.

Defendant argues that "the BOP's refusal to provide necessary residential drug and alcohol treatment also supports compassionate release in this case because it evidences BOP's inability to provide necessary substance abuse treatment to [Defendant]." [Def.'s Mem. Supp. Mot. Compassionate Release, Doc. 989 at 10–11.] The Court disagrees.

"RDAP was not guaranteed to him and it was not a condition of his incarceration." *United States v. Sexton*, No. 2:19-cr-192, 2021 WL 128952, at *3 (S.D. Ohio Jan. 14, 2021) (holding that inmate's inability to participate in RDAP was not an extraordinary and compelling reason warranting compassionate release). Further, as the United States points out in its Response in Opposition, "[Defendant] can still obtain substance abuse treatment in custody through the nonresidential drug abuse treatment program." [U.S. Resp. Opp'n Mot. Compassionate Release, Doc. 999 at 9.] Accordingly, the BOP's denial of his RDAP application is not an extraordinary and compelling reason warranting his compassionate release.

**C.     A Sentence Reduction is Not Warranted Under § 3553(a).**

Even if Defendant could establish an extraordinary and compelling reason warranting his release, § 3553(a) factors, which the Court extensively addressed at his sentencing hearing a year ago, weigh against his release. *See* 18 U.S.C. § 3553(a); *see also United States v. Jones*, 407 F.App'x 22, 25 (6th Cir. 2011) (establishing that district courts need not consider each § 3553(a) factor when addressing a motion for compassionate release). To his credit, Defendant is a non-violent offender who has demonstrated good behavior. *See* 18 U.S.C. § 3553(a)(1); *but see United States v. Hymes*, 19 F.4th 928, 934 (6th Cir. 2021) (providing that good behavior is "expected of federal prisoners") (citation omitted). Nevertheless, he committed a serious crime and showed a blatant disregard for the law when he and his co-conspirators deceived thousands of patients and defrauded health-insurance providers out of $24.9 million. *See* 18 U.S.C. § 3553(a)(1), (2). Additionally, Defendant has only served a fraction— approximately nine months—of his forty-two-month sentence. *See United States v. Goodwin*, No. 2:13-CR-00037-11-JRG, 2020 WL 5412849, at *4 (E.D. Tenn. Sept. 9, 2020) ("[C]ourts have generally granted compassionate release only to defendants who have served a significant portion of their sentences.") (citations omitted). Any reduction in Defendant's sentence would not reflect the seriousness of his offense, promote respect for the law, afford adequate deterrence, or adequately protect the public from future crimes. 18 U.S.C. § 3553(a)(2); *see also United States v. Wilson*, No. 20-6047, 2020 WL 8872371, at *2 (6th Cir. Dec. 30, 2020) (affirming denial of motion for compassionate release on § 3553(a) grounds).

Accordingly, Defendant's Motion for Compassionate Release [Doc. 988], is **DENIED**.

## CONCLUSION

For the reasons stated in Part I of this Order, Defendant's Motion to Amend PSR and Statement of Reasons [Doc. 965] is **DENIED**. For the reasons stated in Part II of this Order, Defendant's Motion for Indicative Compassionate Release Ruling [Doc. 988] is **DENIED**. Defendant's Motion to Expedite Indicative Compassionate Release Ruling [Doc. 993], is **GRANTED**.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE